582 So.2d 1285 (1991)
Rose Casbon OSTER, Individually and on Behalf of Her Minor Son, Gernard Anthony Casbon, Jr.
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, STATE OF LOUISIANA, et al.
No. 91-C-0195.
Supreme Court of Louisiana.
June 21, 1991.
*1286 William Guste, Jr., New Orleans, Kenneth C. Fonte, Golden, Fonte & Faulkner, Metairie, for applicant.
Edward J. Rivera, Joseph P. Demarest, Favret, Favret, Demarest & Russo, New Orleans, for respondent.
COLE, Justice.
In this case we determine the scope of the duty of the Department of Transportation and Development ("DOTD") to maintain that portion of land within its highway right-of-way that lies off the travel portion and shoulder of the highway. In particular, we must determine whether DOTD's duty to maintain the land off the shoulder of the highway encompasses the risk that a recreational, off-road motorcyclist travelling at a high rate of speed through high grass and against the flow of traffic on the adjacent highway, will strike a drainage ditch which has become overgrown with weeds. After conducting a trial on the issue of liability alone, the trial court found DOTD did not owe a duty to plaintiff's minor son because the drainage ditch did not pose an unreasonable risk of harm under the circumstances surrounding the accident. Consequently, the trial court denied recovery to plaintiff. The court of appeal reversed and found the ditch presented an unreasonable risk of harm because the DOTD had allowed the grass in the area to become overgrown, concealing the existence of the ditch. However, the court of appeal found that plaintiff's minor son, Gernard Casbon, was 50% at fault because, at the time of the accident, he was riding his motorcycle at a high rate of speed over unknown terrain. Oster v. Department of Transportation and Development, 572 So.2d 715 (La.App. 4th Cir.1990). Additionally, the court of appeal found that DOTD had constructive knowledge of the existence of the defect on its property for purposes of La.R.S. 9:2800 (West Supp.1991).
We granted writs and now reverse. We hold DOTD did not owe a duty to plaintiff because, under the facts and circumstances of this case, the drainage ditch did not pose an unreasonable risk of harm.

FACTS AND PROCEDURAL HISTORY
Plaintiff brought suit against St. Bernard Parish[1] and DOTD for damages sustained by her sixteen year old son, Gernard Casbon, when he rode his dirt bike into a drainage ditch, located approximately seventeen feet off of Judge Perez Drive (Louisiana Highway 39). The ditch is situated within the right of way of Judge Perez Drive on property owned and maintained *1287 by DOTD. On the day of accident, April 5, 1987, Gernard and another minor, Daniel Ponson, had ridden the dirt bike to the store and were on their way home when the accident occurred. Both boys testified they were about to cross Judge Perez Highway when they noticed two other offroad vehicles being operated on the river side of Judge Perez Highway. They decided to approach the vehicles to see if they knew the drivers. Both Gernard, who was driving the dirt bike, and Daniel, who was riding as a passenger, testified they had never before ridden a dirt bike on the river side of Judge Perez Highway. Gernard said he proceeded down a "trail" consisting of high grass that had been bent down. Despite the fact he was unfamiliar with riding on the river side of the Highway and the fact the area was covered with high grass, Gernard was driving the dirt bike approximately thirty-five to forty miles per hour when he encountered the drainage ditch. According to Gernard, he was unable to detect the presence of the ditch in time to avert the accident because the grass around the ditch was approximately one and one-half feet tall, and grass in the ditch had grown to such a length that it was approximately even with the grass surrounding the ditch. Gernard stated he recognized the presence of the ditch about one second before impact. He locked-up the brakes, causing the bike to skid several feet, but was unable to stop the bike from careening into the ditch. Daniel was thrown clear of the bike and landed, unscathed, somewhere close to the top of the ditch. Gernard was less fortunate. He was propelled over the handlebars and landed at the bottom of the ditch, with the dirt bike landing on his leg.
Expert testimony at trial established the drainage ditch was six and one-half feet deep at its deepest point and twenty feet wide at its widest point. At the point where the accident occurred, Judge Perez Highway is a four-lane thoroughfare with a median. The river side of the highway consists of two north-bound lanes plus an adjacent emergency lane which is ten feet wide. The ditch begins approximately seven feet off of the emergency lane of the highway, about seventeen feet from the right travel lane. The ditch is marked by a hazard delimiter which faces south, in the direction of oncoming vehicular traffic. Gernard did not see the hazard marker because he was travelling in an opposite direction from the vehicular flow on the river side of Judge Perez Highway.
After a trial on the issue of liability alone, the trial court rendered judgment in favor of DOTD and dismissed plaintiff's suit. Focusing on the fact that Gernard was riding his dirt bike at a high rate of speed over unknown terrain, the trial court concluded the drainage ditch did not pose an unreasonable risk of harm to Gernard. The court stated: "[t]he court finds, in weighing all the testimony and facts of this accident, that the drainage ditch in question did not pose an unreasonable risk of harm to Gernard Casbon, nor did [DOTD] have a duty to protect Gernard Casbon from being injured by falling in the ditch while riding a dirt bike."
The court of appeal reversed and rendered judgment in favor of plaintiff, but found Gernard was 50% at fault for the injuries he sustained. The court concluded the grass-covered ditch presented an unreasonable risk of harm. The court recognized that the utility of the ditch was great, but also noted that "our analysis of the utility of the [ditch] must be tempered by recognition of the fact that the tall grass and weeds served no useful purpose whatsoever." 572 So.2d at 718. Focusing on the fact that the ditch was present in a residential area where various types of traffic off the shoulder of the road could be expected,[2] the court concluded "the probability and magnitude of the risk presented by the concealed ditch was great." Id.
In addition to finding the drainage ditch presented an unreasonable risk of harm, the court of appeal found that DOTD had constructive notice of the defect for the *1288 purposes of La.R.S. 9:2800.[3] The court focused on the presence of the hazard marker and the fact that the grass in the area was cut several days after the accident.
As explained more fully below, we find the land in question did not present an unreasonable risk of harm under the facts of this case. Gernard Casbon was driving his dirt bike at a high rate of speed in an area neither designed nor intended for vehicular use. The drainage ditch, which was clearly marked by a hazard delimiter facing in the direction of oncoming motorists, served the useful purpose of preventing water from draining onto the travel portion of Judge Perez Highway and causing a dangerous condition for motorists. Although the grass in and around the ditch was high, the facts indicate the ditch was visible to a person standing approximately forty-four to fifty-nine feet from the ditch. Had Gernard Casbon not been operating his vehicle at such a high rate of speed, he would have had time to notice the presence of the ditch and divert his path.
Because we find the drainage ditch did not present an unreasonable risk of harm under the facts of this case, we need not address the court of appeal's finding that DOTD had either actual or constructive knowledge of the alleged defect for purposes of La.R.S. 9:2800.

LEGAL PRINCIPLES
Plaintiff brought this suit essentially under negligence and strict liability theories. Although the two theories constitute separate and distinct avenues for relief for damages resulting from a dangerous condition on land, the analysis that courts utilize when applying the two theories is similar. Under either theory, the plaintiff must prove 1) the thing which caused the damage was in the custody of the defendant; 2) the thing contained a "defect" (i.e., it had a condition that created an unreasonable risk of harm to the plaintiff); and 3) the "defective" condition of the thing caused the plaintiff's injuries. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990). In essence, the only difference between the negligence theory of recovery and the strict liability theory of recovery is that the plaintiff need not prove the defendant was aware of the existence of the "defect" under a strict liability theory.[4] Under the negligence theory, it is the defendant's awareness of the dangerous condition of the property that gives rise to a duty to act. Under a strict liability theory, it is the defendant's legal relationship with the property containing a defect that gives rise to the duty. Loescher v. Parr, 324 So.2d 441, 446 (La.1976). Under both theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant.
In this case, neither party disputes the fact that the ditch into which Gernard Casbon crashed was in the care, custody, and control of DOTD. Thus, the critical issue is whether the drainage ditch presented an unreasonable risk of harm under the circumstances of this case. If the ditch did not present an unreasonable risk of harm to Gernard Casbon then DOTD, by definition, did not owe a duty to him and cannot be held liable for the damages he sustained.
The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically. As we stated in Landry v. State of Louisiana and the *1289 Board of Levee Commissioners of the Orleans Levee District, 495 So.2d 1284 (La. 1986):
"the unreasonable risk of harm criterion... is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the civil code. Since Articles 2317 and 2322 are not detailed rules for all concrete cases, it becomes the interpreter's duty to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility." 558 So.2d at 1112. Reaching an intelligent and responsible decision of whether a risk is unreasonable involves consideration of moral, social, and economic values as well as the ideal of justice.
Id. at 1287 (quoting Entrevia v. Hood, 427 So.2d 1146 (La. 1983)). Although courts, including this court, have described the unreasonable risk of harm criterion as requiring the court to balance the likelihood and magnitude of harm against the utility of the thing,[5] the balancing test required by the unreasonable risk of harm criterion does not lend itself well to such neat, mathematical formulations. In addition to the likelihood and magnitude of the risk and the utility of the thing, the interpreter should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident.
In essence, the unreasonable risk of harm analysis is similar to the duty-risk analysis which is performed in a negligence case. The obligation placed by article 2317 upon a landowner to maintain his land free from defects does not encompass every injury that happens to occur on his land. See Socorro v. City of New Orleans, 579 So.2d 931 (La.1991) (because an owner cannot be held responsible for all injuries resulting from any risk, the court's duty is to decide which risks are unreasonable). Just as in a negligence analysis, a court utilizing an article 2317 strict liability analysis must determine whether the codal duty imposed upon a custodian of the thing was placed upon him to prevent the type of accident involved in the case before the court. Landry v. State of Louisiana and the Board of Levee Commissioners of the Orleans Levee District, supra; Entrevia v. Hood, supra, (Lemmon, J., concurring). The court must carefully consider all the circumstances surrounding the particular accident under review to determine whether allowing recovery to the particular plaintiff involved, for damages occurring in the particular manner in which the plaintiff was injured, is desirable from the standpoint of justice and the social utility of the conduct of the respective parties.

APPLICATION OF THE LAW TO THE FACTS
We begin by recognizing, as did the court of appeal, that the drainage ditch in question serves a useful purpose. Drainage ditches similar to the one involved in this case are a common feature along the roads and highways throughout this State. The ditch into which Gernard Casbon rode his dirt bike is but one of a series of drainage ditches along Judge Perez Highway. The purpose of these ditches is to keep water from draining onto the travel portion of the Highway and causing a dangerous situation for motorists. Because drainage ditches help make travel along the roads of this state more safe, their utility is great.
Having found the ditch in question is of great utility, we next must determine whether the ditch and the surrounding grass nevertheless presented an unreasonable risk of harm. In determining whether a condition existing on property owned by a defendant presents an unreasonable risk of harm, one invariably must consider the uses to which the land in question is intended to be put. U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780, 785 (La. 1976) (the requirement of reasonable safety implies reasonable safety for any lawful or proper purpose). What presents an unreasonable risk of harm on a playground may *1290 not necessarily present an unreasonable risk of harm in a pasture. See, e.g., Entrevia v. Hood, supra. In this case, the land under scrutiny lies within the Judge Perez Highway right of way. The right of way extends about twenty feet from the edge of the shoulder of the highway. The purpose of the area within the right of way is to provide space for roadway signs, drainage ditches, and future expansion of the roads or shoulders. This area is neither designed nor intended to be used as a track for off-road, recreational vehicular use. Perkins v. State Department of Transportation and Development, 515 So.2d 553, 555 (La.App. 1st Cir.1987), writ denied, 515 So.2d 1114 (La.1987) ([t]he roadway and shoulder of the highway are intended for vehicular use by statutory definition; the roadside ditch is not so intended. The roadside ditch is constructed and maintained for the purpose of draining the highway). In fact, Gene Moody, an expert civil engineer, testified that such a use of the right of way, by creating a significant distraction to oncoming motorists, constitutes a hazard to the motorists lawfully operating on the highway. Thus, Gernard Casbon was using the area within DOTD's right of way in a manner in which the land was not intended to be used. His conduct clearly presented a danger both to himself and to oncoming motorists who may have been distracted by seeing a motorcyclist riding at such a high rate of speed close to the shoulder of the road.[6]
In addition to the fact that Gernard Casbon was using the right of way in a manner in which it was not intended or designed to be used, we deem it important that, contrary to the court of appeal's characterization of it, the drainage ditch was not truly "concealed."[7] The evidence does indeed indicate the grass around the ditch on the day of the accident was approximately one to two feet high.[8] On the other hand, the evidence also indicates the existence of the ditch was discernible from a considerable distance. Both Gernard Casbon and Daniel Ponson testified they saw the ditch at least one second[9] before they hit the ditch, and each stated Gernard applied his brakes but could not stop in time to avoid the ditch. Gernard stated he was travelling approximately thirty-five to forty miles per hour at the time of the accident, and Daniel's testimony corroborates the fact that the boys were travelling at a high rate of speed. Mr. Moody, the expert civil engineer, testified that a person travelling forty miles per hour covers approximately fifty-nine feet per second, and a person travelling thirty miles per hour covers approximately forty-four feet per second. Thus, using the estimate of sighting one second before impact, the presence of the ditch was visible to one approximately forty-four to fifty-nine feet away from it. The inescapable conclusion to be drawn from *1291 this testimony is that Gernard could have noticed the presence of the ditch and taken appropriate action had he not been travelling at such a high rate of speed.
In finding the ditch presented an unreasonable risk of harm, the court of appeal found the likelihood of the type of accident that occurred in this case was high because the ditch was located in a residential area where people "regularly use the area adjacent to the roadways while moving from place to place, for walking, jogging, riding bicycles, etc." 572 So.2d at 718. We do not find the court's conclusion compelling. Whether the area in question is frequented by pedestrians, joggers, or bicycle riders is of little relevance; this case does not involve a pedestrian, a jogger, or a bicycle rider. We are here concerned with a dirt bike rider operating his vehicle some seven to ten feet off the shoulder of the highway, over unknown terrain, through high grass, at a high rate of speed, and in an opposite direction from the flow of traffic on the adjacent roadway. It is highly unlikely that a jogger, pedestrian, or a cyclist would be seven to ten feet off of the shoulder of the road, in high grass, when there is a well-maintained, ten foot shoulder available for use. Furthermore, if Gernard Casbon had been walking, jogging, or riding a bicycle, the facts clearly indicate he would have been able to notice the ditch from a distance more than adequate to allow him to divert his path.
It is true, as the court of appeal noted, the presence of the grass in the ditch served no useful purpose. However, the same would be true even if the grass in and around the ditch at the time of the accident was well-mowed. We think the question is not so much whether the grass was useful; rather, the question is whether it is reasonable to impose a rule of law which would require DOTD to maintain every inch of property within its control neatly mowed or face the prospect of tort liability. DOTD's jurisdiction extends over thousands of miles of roads in this state. Considering the effect of Louisiana's climatic conditions upon the rate at which grass grows, especially during the spring and summer months, maintaining in a wellmowed condition the grass along all of the highways in this state would require a Herculean effort on the part of DOTD, as well as a Herculean budget. We do not believe the law requires such efforts. Rather, the law requires DOTD to maintain the roadways and shoulders of the roads under its control in a reasonably safe condition for vehicular travel. Manasco v. Poplus, 530 So.2d 548 (La. 1988). As to the area off the shoulder of the road, but within the right of way, DOTD owes a duty to maintain the land in such a condition that it does not present an unreasonable risk of harm to motorists using the adjacent roadway or to others, such as pedestrians, who are using the area in a reasonably prudent manner.[10] However, DOTD's duty to maintain the area off the shoulder of the road does not encompass the risk that an off-road dirt bike rider, travelling at a high rate of speed, will strike a drainage ditch. DOTD is simply not under a duty to maintain the grassy area off the shoulder of the road in a condition reasonably safe for recreational, off-road vehicular use.
In her brief to this Court, plaintiff refers to several pedestrian injury cases to support her contention that DOTD is liable under the facts of this case.[11] However, the cases cited by plaintiff do not support the proposition that DOTD's duty to maintain the area off the travel portion and shoulder of a road encompasses the risk that an accident like the one involved in this case will occur. In each of the cases cited by plaintiff, the injured person was a pedestrian who was walking either on the *1292 shoulder of a road or on the median between two roads.[12] The cases cited by plaintiff simply do not involve situations analogous to this case. It is quite reasonable for a pedestrian to expect the shoulder of a road or the median between two roads will be maintained in a condition reasonably safe for walking. To extract from this principle a rule of law requiring the area seven to ten feet off the shoulder of the road to be maintained in a condition reasonably safe for off-road vehicular travel would constitute a quantum leap in logic we are unwilling to make.
We also find unpersuasive the court of appeal's reliance on Turner v. Louisiana Department of Highways, 319 So.2d 840 (La.App. 1st Cir.1975).[13] In Turner, the plaintiff owned a tract of land fronting on a state highway and extending back to a bayou. The Department of Highways constructed a drainage outlet across the plaintiff's property, running from the highway to the bayou. Alleging the construction took place without "right or consent," the plaintiff sued the Department for the loss of use of part of his property, the loss of part of his property by erosion, and the diminution of the value of his property. In the alternative, the plaintiff claimed that if the Department had a servitude or other species of right to cross his property, the Department failed to maintain the outlet properly, causing damage to his property. The trial court granted the Department's peremptory exception raising the objection of no cause of action, and the plaintiff appealed.
The court of appeal in Turner held merely that plaintiff's petition stated a cause of action. Referring to La.R.S. 48:21, the court found that DOTD has a duty to maintain drainage ditches it constructs across another person's property in such a manner that the ditch does not cause physical damage to the person's property. As the court of appeal in this case candidly noted, the facts of Turner are clearly distinguishable from facts of this case. Therefore, we decline to apply the overly broad language used by the court in Turner to a vastly different factual situation which involves policy concerns clearly not considered by that court.

CONCLUSION
For the reasons set forth above, we find the drainage ditch in question did not present an unreasonable risk of harm under the facts of this case. Because of this holding, we need not address the court of appeal's finding that DOTD had constructive notice of the condition of the ditch for purposes of La.R.S. 9:2800. The judgment of the court of appeal is reversed, and the judgment of the trial court in favor of DOTD dismissing plaintiff's suit is reinstated.
REVERSED AND RENDERED.
CALOGERO, C.J., concurs in the result.
DENNIS, J., dissents for the reasons assigned by the Court of Appeal.
NOTES
[1] St. Bernard Parish was dismissed prior to trial.
[2] As examples of the various types of off-road uses which could be expected, the court of appeal listed walking, jogging, and bicycle riding.
[3] La.R.S. 9:2800 provides that a plaintiff shall not have a cause of action against a "public entity" under La.C.C. art. 2317 unless he proves the defendant had either actual or constructive notice of the vice or defect which caused the injury.
[4] La.R.S. 9:2800(B) provides that in an action against a "public entity" under La.C.C. article 2317, the plaintiff must prove the public entity had actual or constructive notice of the defect in the thing before liability will attach. This statute appears to eviscerate the distinction between negligence and strict liability when a public entity is a defendant. However, for purposes of clarity of analysis, we treat the negligence and strict liability theories separately and distinctly even though the defendant in this case is a public entity. Because we hold the drainage ditch did not present an unreasonable risk of harm under the facts of this case, whether DOTD was aware of the condition of the land in its custody is immaterial.
[5] See Hunt v. City Stores, Inc., 387 So.2d 585, 588 (La.1980).
[6] By pointing out that Gernard Casbon was riding a dirt bike in an area not intended to be used as an area for off-road vehicular use, we do not intend to imply that dangerous conditions on property may never be considered unreasonably dangerous when the plaintiff is using the land in a manner for which it was not intended. This Court has long abandoned the formalistic theory that a person's classification as trespasser, licensee, or invitee dictates the degree of the duty owed to that person by the landowner. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La. 1976). Nevertheless, the fact that Gernard Casbon's conduct presented a danger not only to himself but to others is a valid consideration under an analysis which requires the interpreter to weigh the value and social utility of the conduct of the respective parties to a lawsuit.
[7] The court of appeal stated in its opinion that the "defective condition in this case must be described as a `concealed drainage ditch'." 572 So.2d at 718.
[8] Gernard Casbon testified that the grass was about two feet high on the date of the accident. Daniel Ponson stated the grass was approximately one to two feet high. Daniel, when probed more closely as to the length of the grass, stated it was almost knee-high.
[9] Gernard testified in deposition that he saw the ditch approximately three seconds before he ran into it. At trial he stated he saw the ditch approximately one second before entering it. At trial, both Gernard and Daniel stated that Gernard had time to apply his brakes, causing the bike to skid several feet before entering the ditch. Even though the figures used by Gernard and Daniel are only estimates, considering the fact Gernard had time to recognize the presence of the ditch and apply his brakes, we believe the one second estimate is conservative.
[10] For instance, a situation could arise in which a motorist, due to an emergency situation not caused by his own fault, is forced to leave the travel portion and shoulder of a road. In such a situation, any roadside ditches which present a danger should be marked adequately with a hazard delimiter, as was the ditch involved in the present case.
[11] Beck v. Boh Brothers Construction Co., 467 So.2d 1318 (La.App. 5th Cir.1985); Lewis v. State, through Department of Transportation and Development, 436 So.2d 1305 (La.App. 4th Cir. 1983); Willis v. State of Louisiana, 321 So.2d 819 (La.App. 1st Cir.1975).
[12] In Willis v. State of Louisiana, supra, the plaintiff, while walking along the shoulder of a road, was injured when one of his crutches plunged through an opening in a drainage grate located on the shoulder of the road. The drainage grate was difficult to see because it had become covered with a thin crust of soil. In Lewis v. State, Department of Transportation and Development, supra, the plaintiff was a pedestrian who was injured when he fell into an open manhole on an interstate highway median. The open manhole was concealed by grass and weeds. In Beck v. Boh Brothers Construction Co., supra, the plaintiff was a pedestrian injured while crossing a neutral ground on which construction was being performed.
[13] We note for the purpose of clarity that the court of appeal erroneously referred to the opinion in Turner as having emanated from this Court.