607 So.2d 861 (1992)
Patrick J. POOL
v.
CITY OF SHREVEPORT.
No. 24178-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
*862 Weems, Wright, Schimpf, Hayter & Carmouche by Carey T. Schimpf and Kenneth P. Haines, Shreveport, for appellant.
Office of the City Atty. by Terri Anderson-Scott, Shreveport, for appellee.
Before MARVIN, HIGHTOWER and VICTORY, JJ.
HIGHTOWER, Judge.
Plaintiff, Patrick J. Pool, in this personal injury suit, appeals a trial court judgment rejecting his demands against the City of Shreveport and its parks and recreation department ("SPAR"). We affirm.

FACTS
During a softball tournament at Shreveport's Cargill Park on August 6, 1988, plaintiff, who regularly played left center field in such sporting events, collided with the outfield fence while attempting to catch a line drive at Field No. Two. As a result, he sustained facial lacerations requiring 60 to 70 stitches.
Subsequent investigation revealed that, while a sign posted on the fence indicated the enclosure to be 300 feet from home plate, the actual distance measured only 276 feet. Plaintiff thereafter instituted suit seeking damages against the city and SPAR. Defendants answered, alleging the accident resulted solely from plaintiff's fault.
At trial, plaintiff testified concerning the particulars of the mishap. He admitted that, before colliding with the fence, he had positioned himself 30 to 40 feet from that structure. Upon the ball being hit, he moved toward the fence, while simultaneously watching the ball. In describing what transpired, he stated, "I took off running [with] my back ... to the ball.... And, I was watching the ball and it happened within, like, three or four seconds. And, I had the ball ... and I turned around and there was a fence and I was running full blast and I hit the fence." During the previous five years, he had participated in softball games on Field No. Two between seven and eight times.
Plaintiff also called John Owen, a teammate who played the shortstop position on August 6, 1988. He noted that after turning and progressing directly toward the fence, Patrick, an above average softball player, collided with the enclosure while *863 running "full speed" and looking over his shoulder for the ball. The deposition testimony of Rodney Guin and Jeffrey Anderson, other teammates who similarly rated Patrick's abilities as "way above average" and "good," corroborated the occurrence. Also, while they each agreed that a warning track[1] would have significantly reduced the probability of the collision, the three witnesses stated that no Shreveport area ballpark is so equipped. Although Guin believed distance indicators principally aided outfielders, Owen stated that such markers primarily benefit batters in judging efforts needed for various hitting strokes. Anderson felt both offensive and defensive players derived an advantage from footage signs.
Glenn Evans, superintendent of SPAR, and Ivan "Ike" Wheeler, a former semi-professional fast pitch softball player who served as commissioner of the American Softball Association and had been connected with SPAR for many years, testified on behalf of the city. They both acknowledged awareness, prior to the August 1988 accident, that the field had been incorrectly measured and marked. In fact, Wheeler noted that the same distance sign had been displayed on the Cargill field since 1975, at the least.
Nevertheless, as former coaches, both defense witnesses related teaching outfielders to determine their distance from the fence before reacting to the ball's trajectory. Wheeler, who stated plaintiff had been an "outstanding softball player" during the 15 years he had watched him participate in the sport, further opined that an experienced player relies upon instincts and personal judgment in determining such distances.[2] He also observed that posted measurements mainly serve as an indicator for spectators and batters, that most softball diamonds in the Shreveport area remain unmarked for distances, and that none of those fields provide warning tracks.
At the conclusion of trial, the district court found that plaintiff should have monitored his position vis-a-vis the fence as he attempted to catch the ball. Furthermore, the judge stated, "the difference in the actual footage from that shown on the marker does not make the field unreasonably dangerous for normal recreational slow-pitch softball." After a written judgment appeared of record on October 22, 1991, plaintiff lodged this appeal.

DISCUSSION
In seeking recovery, plaintiff-appellant first asserts the theory of strict liability founded within C.C. Art. 2317. He argues that he did not act unreasonably in relying on the inaccurate distance indicator, and that persons should be able to assume such footage markers are correct when attempting to catch a line drive. He additionally maintains that the district court erred in utilizing concepts of contributory negligence and assumption of the risk in reaching its conclusion. Alternatively, he asserts that the city should be found negligent, under C.C. Art. 2315, for failing to correct the marker after obtaining knowledge of its inaccuracy. Conversely, the city argues that the district judge's decision finding Cargill Field No. Two not to be unreasonably dangerous under the circumstances, and concluding that fault laid solely with appellant, is not manifestly wrong.
Although delictual responsibility arises differently under the two indicated codal articles, either concept requires that the plaintiff prove (1) the defendant had custody of the thing causing injury; (2) the thing contained a "defect" (i.e., it had a condition creating an unreasonable risk of harm to the plaintiff); and (3) the "defective" condition caused the plaintiff's injury. Oster v. DOTD, 582 So.2d 1285 (La.1991); Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990). As noted in Oster, supra, the essential difference between the two theories of recovery is that knowledge of *864 the defect is unnecessary under Art. 2317, inasmuch as the defendant's legal relationship with the defective property gives rise to strict liability. See also Loescher v. Parr, 324 So.2d 441, 446 (La.1976). Contrarily, under negligence principles, it is awareness of the dangerous condition that engenders a corresponding duty to act.[3]Oster, supra. See also Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
Obviously, a landowner cannot be held responsible for all injuries that occur upon his property. More specifically, insofar as premises used for athletic events, the owner or occupier is neither the insurer of those utilizing the facilities, nor is he required to eliminate every source or possibility of danger. Shipley v. Rec. & Park Com'n. for EBR, 558 So.2d 1279 (La.App. 1st Cir.1990), writ denied, 565 So.2d 947 (La.1990); Godfrey v. Baton Rouge Rec. & Parks Com'n., 213 So.2d 109 (La.App. 1st Cir.1968), writ refused, 252 La. 958, 215 So.2d 128 (1968). Rather, such a party's obligation to participants is to maintain the premises in a fashion commensurate with ordinary and reasonable care. Rosenberger v. Central La. Dist. Livestock Show, Inc., 312 So.2d 300 (La.1975); Shipley, supra. Cf. also Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988). Of course, whether an unreasonably dangerous condition exists will depend upon the particulars of the case. Oster, supra; Socorro, supra; Murray, supra; Landry v. State, 495 So.2d 1284 (La.1986).
In the instant case, neither party disputes the fact that the city retained the care, custody, and control of Cargill Park at the time of the incident. Thus, the critical issue respecting liability is whether there existed an unreasonable risk of harm. That criterion, a balancing of the likelihood and magnitude of harm against the utility of the "thing," entails addressing a myriad of social, economic, and moral values, including the cost of avoiding the risk and the social utility of plaintiff's conduct. Oster, supra.
In this case, the evidence preponderates that posted measurements primarily benefit batters, not outfielders. In addition, while Field No. Two had an improperly posted distance marker, it is also shown that the condition existed since at least 1975 without other similar accidents having occurred. On this record, then, the utility of the sports facility clearly outweighs any likelihood or magnitude of harm.
Equally important, the testimony establishes appellant as an above average softball player, well experienced in the left center field position. Under such circumstances, as related by Wheeler and Evans, personal knowledge derived from participation in the game should have instinctively signaled his nearness to the fence. Indeed, the trial judge similarly concluded as much, and we cannot say that determination is manifestly erroneous. Nor do we consider these findings suggestive of former contributory negligence standards or the now-subsumed assumption of risk doctrine. Cf. Murray, supra; Picou v. Hartford Ins. Co., 558 So.2d 787 (La.App. 5th Cir.1990).
Simply stated, as a whole, the record does not show that the city's recreational facility created an unreasonable risk of harm vis-a-vis this experienced softball player.

CONCLUSION
For these reasons, the judgment of the district court is affirmed. Costs are to be paid by appellant.
AFFIRMED.
NOTES
[1] Designed to alert a fielder that he is approaching the fence, a warning track is a non-grassy strip around the outside edge of the outfield.
[2] Calvin Gillins and John Walker, both experienced outfielders, similarly testified that good players innately know the distance to the fence.
[3] To the extent that appellant's case stands on allegations of strict liability, LSA-R.S. 9:2800(B) provides that the plaintiff, in actions against a "public entity," must show actual or constructive notice of the defect before liability attaches. Hence, the statute appears to eviscerate negligence and strict liability distinctions when a public entity is the defendant. Oster, supra.

In the case sub judice, the city admitted at trial to knowledge of the inaccurate distance indicator before the accident transpired. Nonetheless, in that we find no unreasonable risk of harm existed under the circumstances, awareness is immaterial.