ARMSTRONG, Judge.
Plaintiff Marcel Burton was bitten by a rat while visiting in a housing project apartment owned by defendant Housing Authority of New Orleans (“HANO”) and occupied by third party defendant Carolyn Howard and her children. Burton sued HANO for negligence pursuant to Louisiana Civil Code Article 2315 and for strict liability pursuant to Louisiana Civil Code Articles 2317 and 2322. HANO denied liability, pleaded comparative fault of Burton and made a third party demand against Ms. Howard for contribution or indemnity. Following a bench trial, the trial court found HANO not hable and dismissed Burton’s suit. The trial court’s single-sentence reasons for judgment state: “The duty owed to plaintiff, Marcel Burton, did not extend to seeing he was not bitten by a rat.” It is from this judgment that Burton now appeals. For the reasons that follow, we reverse and render judgment in favor of Burton.
The record reflects that at the time Burton was bitten, the Howard apartment was infested with rats. This had been reported by Ms. Howard to HANO. One of Ms. Howard’s children twice had been bitten by rats and that had occurred several months or a year prior to Burton’s being bitten. The rats entered Ms. Howard’s apartment through holes in the walls, floor and ceiling. The rat holes had been present when Ms. Howard moved into the apartment and had been reported to HANO when Ms. Howard’s child was bitten. Both the rat infestation and the rat holes had existed for several months or perhaps a year prior to Burton’s being bitten. Aso, it appears that HANO knew of the rat infestation and the rat holes several months or a year prior to Burton being bitten.
For the sake of simplicity we will analyze HANO’s liability to Burton only in terms of strict liability under Louisiana Civil Code Articles. 2317 and 2322 although, in view of HANO’s knowledge of the rat infestation and the rat holes, a similar analysis of HANO’s liability could be made in terms of negligence under Louisiana Civil Code Article 2315. See generally, e.g., Oster v. Dept. of Transportation and Development, 582 So.2d 1285, 1288 (La.1991) (in property owner liability eases, strict liability differs from negligence in not requiring that defendant knew or should have known of unreasonably dangerous condition). Accord Hunt v. City Stores, 387 So.2d 585, 588 (La.1980). In order to establish HANO’s liability, Burton must show: (1) HANO had custody of Ms. Howard’s apartment; (2) Ms. Howard’s apartment had a “vice” or “defect” — i.e. an unreasonably dangerous condition; and (3) the unreasonably dangerous condition caused Burton’s injury. Oster, 582 So.2d at 1288 (Civil Code Article 2317); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990) (Civil Code Aticles 2317 and 2322).
*246 The first element, custody of Ms. Howard’s apartment, is clearly met because HANO is the owner of the apartment. When the owner of an unreasonably dangerous thing transfers physical possession to another, the owner continues to have “custody” (or “garde”, to use the French term which is translated imperfectly into English as “custody”) within the meaning of Civil Code Article 2317. Ross v. LaCoste de Monterville, 502 So.2d 1026, 1029-32 (La.1987). Similarly, the duty imposed upon the owner of a building by Civil Code Article 2322 is “non-delegable”, Olsen v. Shell Oil Co., 365 So.2d 1285, 1293-94 (La.1979), and the owner’s liability under Civil Code Article 2322 continues even if the building or a part of it is leased. Klein v. Young, 163 La. 59, 111 So. 495, 497 (La.1926). Accord Hopkins v. Travasos, 569 So.2d 1056, 1059 (La.App. 3rd Cir.1990) (following Klein). See also Womack v. Housing Authority of New Orleans, 508 So.2d 936 (La.App. 4th 1987) (owner of apartment was held liable under Civil Code Article 2322 although apartment was occupied by others).
The second element, that Ms. Howard’s apartment contained a “vice” or “defect” — i.e. an unreasonably dangerous condition — also is clearly met. The rat infestation and the rat holes had existed for several months and perhaps a year prior to Burton being bitten and so constituted a relatively permanent condition susceptible to being considered a “vice” or “defect” in the apartment itself within the meaning of Civil Code Articles 2317 and 2322. Compare Mitchell v. Travelers Ins. Co., 464 So.2d 404, 406 (La.App. 1st Cir.1985) (“temporary presence” of rice on floor of supermarket for less than fifteen minutes is not a defect for purposes of Civil Code Article 2317); McKinnie v. Dept. of Transportation and Development, 426 So.2d 344, 346-47 (La.App. 2d Cir.1983) (“temporary presence” of ice or water on road is not a defect for purposes of Civil Code Article 2317), writ denied, 432 So.2d 266-67 (La.1983).
The issue thus becomes one of whether the rat infestation and the rat holes created an unreasonably dangerous condition.
Although courts, including this court, have described the unreasonable risk of harm criterion as requiring the court to balance the likelihood and magnitude of harm against the utility of the thing, the balancing test required by the unreasonable risk of harm criterion does not lend itself well to such neat, mathematical formulations. In addition to the likelihood and magnitude of the risk and the utility of the thing, the interpreter should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiffs conduct at the time of the accident.
In essence, the unreasonable risk of harm analysis is similar to the duty-risk analysis which is performed in a negligence case. The obligation placed by article 2317 upon a landowner to maintain his land free from defects does not encompass every injury that happens to occur on his land. See Socorro v. City of New Orleans, 579 So.2d 931 (La.1991) (because an owner cannot be held responsible for all injuries resulting from any risk, the court’s duty is to decide which risks are unreasonable). Just as in a negligence analysis, a court utilizing an article 2317 strict liability analysis must determine whether the codal duty imposed upon a custodian of the thing was placed upon him to prevent the type of accident involved in the case before the court. Landry v. State of Louisiana and the Board of Levee Commissioners of the Orleans Levee District, 495 So.2d 1284 (La.1986); Entrevia v. Hood, 427 So.2d 1146 (La.1983), (Lemmon, J., concurring). The court must carefully consider all the circumstances surrounding the particular accident under review to determine whether allowing recovery to the particular plaintiff involved, for damages occurring in the particular manner in which the plaintiff was injured, is desirable from the standpoint of justice and the social utility of the conduct of the respective parties.
Oster, 582 So.2d at 1289. See also Sistler, 558 So.2d at 1112-13. The likelihood of the risk of rat bites in Ms. Howard’s apartment is manifest — one of Ms. Howard’s children twice had been bitten by rats prior to Burton’s being bitten. The magnitude of the *247 risk of rat bites (i.e., the severity of the consequences if rat bites occur) also is substantial as the apartment is intended for use as a residence and is occupied by a mother and her seven children. The rats might not present such a serious risk in, for example, an industrial setting. Of course, rat infestation and rat holes have no social utility. A more pertinent question is the “cost to the defendant [HANO] of avoiding the risk.” See, e.g., Oster, 582 So.2d at 1291 (keeping grass closely mowed adjacent to public highways, so as to reveal obstacles to persons using those areas, would require “herculean effort" and “herculean budget”, held no liability under Civil Code Article 2817 despite lack of utility of long grass). However, no evidence was presented at trial to suggest that the elimination of the rat infestation and/or sealing the rat holes would present any unusual difficulty or cost. To the contrary, a HANO representative testified that HANO does undertake “rat abatement” at times and that it is HANO’s practice, upon being notified of rat holes by tenants, to have the rat holes sealed. In fact, HANO did seal the rat holes in Ms. Howard’s apartment, but not until three years after Burton was bitten. Further, Section 5:028 of the Sanitary Code of the State of Louisiana requires owners of buildings to keep them “free from rodents” and Section 5:034 of that Code requires of building owners that holes in walls “shall be protected against the ingress of rodents by closing such openings with cement, mortar, concrete or masonry.” Thus, we conclude that it was unreasonably dangerous for Ms. Howard’s apartment to be infested with rats and to have rat holes.
There is no dispute as to the third element, that the “vice” or “defect”—the unreasonably dangerous condition—caused Burton’s injury because it is undisputed that Burton was bitten by a rat and so injured.
In sum, the rat infestation and the rat holes in Ms. Howard’s apartment presented an unreasonable risk of harm to all persons occupying or visiting there, including Burton. It is both normal and forseeable that there will be visitors to apartments, so the duty of an owner of an apartment under Civil code Articles 2817 and 2322 extends to visitors as well as to occupants of the apartment. See, e.g., Klein, 111 So. at 496-97, Hopkins, 569 So.2d at 1059-60. See also Womack, supra (HANO held liable to visitor who fell on steps).
Immediately after being bitten, Burton washed the wound and put peroxide on it but, nevertheless, quickly developed a serious infection. He was admitted to Charity Hospital for surgery and was hospitalized for sixteen days. Burton was examined several times by doctors for a period of over two months after his discharge from the hospital and they noted that his wound still, was not completely healed and was very painful. Medical examinations at about one year and at about sixteen months after the rat bite showed that Burton continued to suffer pain while using his bitten hand in some normal activities, that he had lost about one third of the gripping strength of his bitten hand (compared with the gripping strength of the other hand), and that he had lost about a quarter of the flexion between the thumb on the bitten hand and the rest of the bitten hand (compared with the flexion of the other hand). Burton’s medical bills are $3,502.00. It was stipulated at trial that Burton made no claim for lost wages. We find Burton’s total damages to be twenty-five thousand ($25,000) dollars.
We find HANO’s defense of comparative fault, which is based simply upon Burton’s visiting the apartment where he was bitten, to be without merit. An apartment, of course, is meant to be occupied by people including visitors. Burton did not act unreasonably simply by visiting the apartment. Nor does the record show anything else to suggest that Burton failed to exercise due care for his own safety.
HANO presented evidence that from its records, in May, 1982, over five years before the August 1987 date Burton was bitten, Ms. Howard was criticized by HANO for improper garbage disposal and other unsanitary conditions in her apartment. HANO also presented evidence from its records that in 1987, Ms. Howard’s “housekeeping” was in some totally unspecified way “unsatisfactory”. HANO argues that Ms. *248 Howard’s housekeeping was such as to attract rats, and therefore, HANO should recover on its third party demand against Ms. Howard. However, the evidence presented in support of this theory is clearly insufficient to support the third party demand.
For the foregoing reasons, we reverse the judgment of the trial court, enter judgment in favor of plaintiff Marcel Burton and against defendant, HANO, and award plaintiff total damages in the amount of $25,000.00 plus legal interest from the date of judicial demand and all costs of court at the trial and appellate court levels. We dismiss HANO’s third party demand against third-party defendant Carolyn Howard.
REVERSED AND RENDERED