11ARMSTRONG, Judge.
This is an appeal by the plaintiff from a summary judgment in a personal injury case. The plaintiff alleges that she was injured on certain property that was in the custody of the defendants because the property was in an unreasonably dangerous condition. The defendants moved for summary judgment on the ground that the property was not in an unreasonably dangerous condition. The trial court granted the defense motion and the plaintiff appealed. We agree with the trial court and affirm.
The plaintiff, Stephanie DeLaughter, was riding her horse on a portion of a levee which she alleges was in the custody of the defendants, the West Jefferson Levee District and the City of New Orleans by and through the Public Belt Railroad Commission. Her daughter, Stacie DeLaughter, was riding near her. The specific portion of the levee on which she was riding was the “batture” and she was riding near the river side “toe” of the levee. The “toe” is the bottom of the slope of the levee and the “batture” is the area of land between the river side toe and the river itself.
The plaintiffs horse stumbled and, as a result, the plaintiff fell off of her horse and was injured. The next day, the plaintiffs daughter, Stacie, and her husband, Thomas, went to the scene of the plaintiffs fall to retrieve some ropes that had been left there. They found a line of scattered pieces of broken concrete near the toe of the levee where the |2plaintiff had fallen. The pieces of broken concrete were approximately four to six inches in diameter. The pieces of broken concrete were not readily visible from horseback as they were in grass approximately four to six inches high.
It is the plaintiffs theory that her horse stumbled on one of the pieces of broken concrete. She argues that the presence of the pieces of broken concrete, particularly in four to six inches of high grass, made the levee unreasonably dangerous. She sued the defendants alleging that they had custody of the levee and that the defendants were liable in negligence and/or strict liability. (The plaintiffs husband, Thomas, also sued the defendants for loss of consortium but, for the sake of simplicity, we will refer only to “the plaintiff.”)
The defendants’ motion for summary judgment was based on the argument that the mere presence of the pieces of broken concrete, even in four to six inch high grass, did not make the levee unreasonably dangerous. Solely for purposes of their motion for summary judgment, the defendants conceded that they had custody of the levee and that the pieces of broken concrete caused the *508 plaintiffs horse to stumble, which in turn caused her to fall. The trial court’s judgment, granting the defense motion, states that “the presence of a concrete rock or stone on undeveloped batture land did not constitute a defect or unreasonably dangerous condition for which liability may be imposed on either Public Belt or Levee District.”
When we review on appeal a trial court’s summary judgment, we use the same criteria as applied by the trial courts to determine whether summary judgment is appropriate. Williams v. City of New Orleans, 621 So.2d 3 (La.App. 4th Cir.1993); Hartford Accident & Indemnity Co. v. Illinois Central Gulf Railroad Co., 598 So.2d 1107 (La.App. 4th Cir.), writ denied, 605 So.2d 1148 (La.1992). Summary judgment should be granted if the pleadings, depositions, other discovery on file and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.Proc. art. 966. When a motion for summary judgment is made and properly supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La.Code Civ.Proc. art. 967.
bin the present case, there is no dispute about the dispositive facts. Indeed, the crucial facts as to the accident itself, and the condition of the levee (the pieces of broken concrete in the grass), are presented in the deposition testimony of the plaintiff herself, her husband and her daughter. The issue in this case is as to the proper legal conclusion to be drawn from those facts.[1]
In order for the defendants to be held liable to the plaintiff under either strict liability or negligence theories, the plaintiff must prove that (1) the defendants had custody of the levee; (2) the levee was in an unreasonably dangerous condition (had a “defect”); and (3) the unreasonably dangerous condition (the “defect”) caused the plaintiffs injury. See Oster v. Department of Transportation and Development, 582 So.2d 1285 (La.1991). The essential difference between the negligence and strict liability theories is that, for strict liability, the defendants need not be shown to have had knowledge or notice of the unreasonably dangerous condition. Id. With regard to public entities, the strict liability action has been statutorily modified to require notice of the unreasonably dangerous condition before liability may be imposed. La.R.S. 9:2800. In the present case, the defendants have conceded, solely for purposes of their motion for summary judgment, that they had custody of the levee and that the stones and/or pieces of broken concrete caused the plaintiffs horse to stumble. There is some disagreement in the briefs as to whether the defendants had notice of the stones and/or pieces of broken concrete. However, the notice issue is of no consequence in the present case because the basis of the trial court’s decision, and the dispositive issue for our own decision, is the issue of whether the broken pieces of concrete, with the grass they were in, constituted an unreasonably dangerous condition.
Broken pieces of concrete are used in the construction of levees and are referred to as “rip-rap.” Rip-rap was placed on portions of the levee to prevent erosion of the levee byUthe river and was then covered with dirt. It appears that the pieces of broken concrete that the plaintiff encountered were rip-rap that had been uncovered and exposed by the rise and fall of the river. Rip-rap also is used in the maintenance of the levee, to fill potholes on the top of the levee, and it is possible that the pieces of broken concrete the plaintiff encountered were rip-rap that had rolled down the slope of the levee to the toe. In any event, rip-rap is a necessary and *509 normal part of the construction and maintenance of the levee.
The fact that a condition produces an injury, and therefore presented a danger, does not mean that the condition was unreasonably dangerous. In other words, property owners are not obligated to remove every conceivable danger on their property but, instead, must avoid unreasonable danger to others or face liability. Oster v. Department of Transportation and Development, 582 So.2d 1285 (La.1991); Socorro v. City of New Orleans, 579 So.2d 981 (La.1991). Determining whether a condition presents an unreasonable danger involves not only weighing the likelihood and severity of possible harm against the utility of the condition at issue, but also moral, social and economic factors as well as the ideal of justice. Oster, supra; Socorro, supra; Landry v. State of Louisiana and the Board of Commissioners of the Orleans Levee District, 495 So.2d 1284 (La.1986).
We believe that the Supreme Court’s Oster and Socorro decisions are instructive as to the proper disposition of the present case. Each examined multiple factors in determining whether a particular condition was unreasonably dangerous and each differs from the present ease in some respects. However, of great relevance to the present case is that both Oster and Socorro discussed the cost of removing the condition at issue as a factor to be considered in determining whether the condition at issue presents an unreasonable danger.
In Oster, a young man on a small off-road recreational vehicle was driving on a highway right of way. There was a ditch on the highway right of way which was obscured to some degree by high grass both in the ditch and surrounding the ditch on the right of way. The plaintiff ran into the ditch and was injured. The plaintiff argued that the high grass concealing the ditch presented an unreasonably dangerous condition. As the ditch itself was of great utility, and the tall grass had no utility, the real issue was whether the state should |5have cut the grass. The Oster court noted that it would be a huge task, requiring a huge budget, to keep all of the grass along the state’s highways cut short. This huge cost had to be considered in deciding whether the high grass presented an unreasonable danger and contributed to the Oster court’s conclusion that the right of way was not unreasonably dangerous.
In Socorro, the plaintiff dove off of a bulkhead of a levee into shallow water and was injured. The plaintiff had not realized that the water off of the bulkhead was shallow and had a rocky bottom. There were no signs or barricades to warn of the danger. One of the factors considered by the Socorro court was the cost of simple precautions that would have served to prevent such accidents, such as a barrier rope or a warning sign, would have been minimal. The minimal cost of removing the condition at issue contributed to the conclusion that the condition was unreasonably dangerous.
In the present case, the effort and consequent cost of removing the condition at issue, the rip-rap in the grass, would be enormous when considered in terms of all the state’s levees. In other words, while it would be relatively easy to clear a small area of rip-rap or to elose-cut the grass for a small area, those tasks would be monumental when applied to the great length of levees in the state. Levees, including battures, cover large areas and to remove all exposed or stray rip-rap on a continuous basis obviously would require a great deal of manpower on an ongoing basis. Cutting all the grass on the levees close enough to prevent it from concealing exposed or stray rip-rap would, much like the continuous close mowing rejected by the Supreme Court in Oster, be an extremely large task — especially in the spring and summer when grass grows quite quickly in Louisiana’s climate.
The trial court’s judgment, quoted above, and the defendant’s briefs argue that the levee batture is “undeveloped” in the sense that it is simply vacant land and not specifically adapted to horse riding or other recreation, and this also supports the conclusion that the levee was not in an unreasonably dangerous condition. The intended use of the land in question is relevant to determining whether a condition of the land is unreasonably dangerous. See Oster, supra. *510 Like the right of way in the Oster case, the Levee in the present case is constructed and maintained with a specific, non-recreational, purpose in 16mind. The fact that the public made informal recreational use of the right of way in Oster did not alter the Oster court’s apparent conclusion that undeveloped public property such as a right of way should not be considered in the same way as a dedicated recreational area in making the determination of whether the property is in an unreasonably dangerous condition. Similarly, in the present ease, the undeveloped levee bat-ture should not be considered in the same way as a dedicated recreational area in determining whether it had an unreasonably dangerous condition.
Our decision in Giles v. Humble Oil & Refining Co., 384 So.2d 569 (La.App. 4th Cir.1980), is analogous to the present case. In that case, the plaintiff was walking across an empty lot, which was grown up in grass, and he tripped on a metal surveyor’s stake that was hidden from view by the grass. The defendant owned the empty lot. We held that, despite a severe injury to the plaintiff, the empty lot was not in an unreasonably dangerous condition. In particular, we held that:
The grass on the lot was not unusually high for the New Orleans area in July when this accident occurred and the little iron stake was barely protruding above the level of the ground. To impose a duty upon Exxon [the owner of the lot] to discover such a tiny obstruction on this large lot of ground would be unreasonable[.]
384 So.2d at 571. See also Moore v. St. Bernard Parish Police Jury, 619 So.2d 719 (La.App. 4th Cir.), writ denied, 625 So.2d 1035 (La.1993) (plaintiff tripped in hole in unilluminated front yard of public property at night, held no liability of defendant due to failure to keep yard free of holes).
In sum, while it was conceded for purposes of the summary judgment motion below that the rip-rap in the grass caused the plaintiffs horse to stumble, and, thus, there is no doubt that the rip-rap in the grass presented some danger to horseback riders, we do not believe that the rip-rap in the grass presented an unreasonable danger. Property owners Rare not liable for every injury that is caused by a condition on their property. It is only unreasonable danger that results in liability.
For the foregoing reasons, the judgment of the trial court is Affirmed.
AFFIRMED.

. In opposition to the motion for summary judgment, the plaintiff presented only the affidavit of an experienced horse rider to the effect that pieces of broken concrete present a danger to a horse and rider. This is not really an issue. As the horse did stumble, and the plaintiff was hurt and the defendants have conceded for purposes of their motion for summary judgment that the broken pieces of concrete caused the horse to stumble. The danger pointed out by the affidavit is already apparent. However, as will be discussed below, the issue is not danger per se but, instead, unreasonable danger.