670 So.2d 316 (1996)
Catherine C. MONCLA, Plaintiff-Appellee,
v.
ALBERTSON'S INC., et al., Defendants-Appellants.
No. 95-1139.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1996.
Writ Denied April 19, 1996.
Eugene P. Redmann, Michel Powers Wilty, New Orleans, for Catherine C. Moncla.
*317 Gregory Dwayne Maricle, Mandeville, for Albertson's Inc., et al.
Before YELVERTON, WOODARD and AMY, JJ.
YELVERTON, Judge.
Catherine Moncla, walking out of Albertson's, a grocery store in Lafayette, with a bag of groceries and her purse in her hands, tripped over a speed bump in front of the store and fell forward, landing on her face. As a result of the accident she injured three of her teeth.
Moncla filed suit against Albertson's, Inc., Anse Buerluchaud Land Company (Anse), and the general partners of Anse. Anse was the owner and lessor of the premises.
The trial judge found that the speed bump presented an unreasonable risk of harm, and that the defendants were strictly liable for maintaining the speed bump on the premises. The trial judge held all defendants solidarily liable to Moncla. It placed 80% of the fault on the defendants and 20% of the fault on Moncla. Moncla was awarded $17,500 in general damages and $1,152.06 for past medical expenses.
The defendants appealed. Moncla answered the appeal alleging the damage award was insufficient. We reverse and enter judgment for the defendants.

STRICT LIABILITY
The defendants do not contest that the speed bump caused Moncla's injuries. Nor do they contest that it was in their custody. They contest, as erroneous, the trial court's finding that the speed bump was defective and thereby created an unreasonable risk of harm.
The suit was based on the strict liability provisions of Article 2317 of the Louisiana Civil Code. Under strict liability, the plaintiff must prove 1) the thing which caused the damage was in the custody of the defendant; 2) the thing contained a "defect" (i.e., it had a condition that created an unreasonable risk of harm to the plaintiff); and 3) the "defective" condition of the thing caused the plaintiff's injuries. Oster v. Dept. of Transp. & Development, 582 So.2d 1285 (La.1991).
The unreasonable risk of harm analysis is similar to the duty-risk analysis which is performed in a negligence case. The obligation placed by La.Civ.Code art. 2317 on a landowner to maintain his land free from defects does not encompass every injury that happens to occur on his land. Oster, 582 So.2d 1285. Just as in a negligence analysis, a court utilizing a strict liability analysis must determine whether the codal duty imposed upon a custodian of the thing was placed upon him to prevent the type of accident involved in the case before the court. Id. The court must carefully consider all the circumstances surrounding the particular accident under review to determine whether allowing recovery to the particular plaintiff involved, for damages occurring in the particular manner in which the plaintiff was injured, is desirable from the standpoint of justice and social utility of the conduct of the respective parties. Id.
"The concept of unreasonable risk of harm is analogous to the concept of `unreasonably dangerous' developed in products liability. `Unreasonably dangerous' has been defined as meaning `the article which injured the plaintiff was dangerous to an extent beyond that which would be contemplated by an ordinary consumer.'" Simeon v. Doe, 618 So.2d 848, 851 (La.1993).
The speed bump in question serves a useful purpose. Speed bumps slow down traffic. Testimony at trial revealed that in 1980 a decision was made to place two speed bumps in front of Albertson's because traffic there was traveling too fast. There was concern for the safety of the customers. The protection of pedestrians in this highly traveled area by automobiles is one that society expects. The speed bumps serve well in providing this protection.
Moncla's petition for damages alleged that she "tripped and fell while walking in the parking lot" and suffered injuries to her mouth, jaw and teeth. She alleged that she tripped and fell because defects in the premises presented an unreasonable risk of harm. Her testimony as to how the accident *318 happened consisted of one sentence: "I walked out of the store and walked down into the street, and fell over the speed bump." The emergency record at Our Lady of Lourdes Regional Medical Center gave this history: "felltripped on speed bump. Fell face first." Her dentist testified that "she basically looked like a person who had fallen flat on her face on concrete."
It was stipulated at trial that there were no other accidents involving these speed bumps. It was stipulated that there had been no physical changes, other than repainting, in the speed bumps since their installation.
There was no expert testimony presented by either side. When asked what might have been done to prevent her accident, Moncla answered that the speed bump could have been a little lower or more brightly marked. Other than that there was no evidence at all regarding a defect.
Moncla went to Albertson's on many occasions before. She knew there were speed bumps. She said they were painted a bright yellow. The day she fell, when she walked into the store she did not cross over one. On her way out, she took a different route.
The trial judge found the speed bump was unreasonably dangerous by virtue of his personal examination. He stated that upon the request, agreement and consent of counsel, he went to the site "to observe the speed breaker bump." When he got there, he examined it. Returning to court and back on the record, he said that he was six feet one inch tall and had a reasonable stride, but that he could not step over the speed bump without the heel of his lead foot striking the incline on the far side. He also noted that his leather soles slipped on the top. The fact that it was "very wide" and "somewhat high" led him to find that the speed bump was unreasonably dangerous.
We find manifest error. Based on our assessment of the evidence in the record, it was clearly insufficient to support a finding that the speed bump presented an unreasonable risk of harm. The trial judge's experiments on the speed bump fail to add anything in Moncla's favor. For the following reasons we find that this finding of fact was manifestly erroneous.
Usually a trial judge is not permitted to visit an accident site to perform tests, take measurements, and make visual observations and then rely on these tests and observations in deciding the case. Elliott v. U.S. Fidelity & Guar. Co., 568 So.2d 155 (La.App. 2 Cir.1990). However, before testimony began, the attorneys stipulated "to allow for the Court's present day inspection of the premises" after the completion of the testimony. Therefore, the parties contemplated that the trial judge would make decisions based on his personal visit that would take into account something more than what the photographs in evidence revealed. However, we agree with defense counsel's objection, made after the trial judge noted his visit on the record, that the trial judge's experiments were irrelevant to the present case. The trial judge found that his soles slipped and that he could not take the whole speed bump in one stride. Taking the same liberty that the trial judge did in the interpretation of his experiment, we find that it does not re-enact the way her accident happened as described by Moncla. Moncla tripped over the speed bump and fell on her face.
Other than this experiment by the trial judge, Moncla produced no evidence of a defect in the speed bump. In oral argument plaintiff's counsel conceded that speed bumps serve a useful purpose and that they can be built so as not to be unreasonably dangerous. However, Moncla produced no evidence of safety design standards such as measurements, configurations, locations, painting, and other characteristics, to separate the reasonably safe from the unreasonably dangerous speed bumps. In other words, Moncla produced no evidence to show what it was about this speed bump that was unreasonably dangerous and that caused her to fall over it. All she proved was that it was there and she fell. The only testimony regarding the height of the speed bump was that of Robert Fournet, a general partner in Anse, who stated that it was one and one-half inches high. There was no evidence that a one and one-half inch high speed bump is unreasonably dangerous. We closely studied *319 the good quality photographs that the plaintiff introduced into evidence and our observations of them revealed nothing out of the ordinary, as speed bumps go. Not having been schooled by the evidence on what to look for, we could find no defect. Plaintiff failed to prove her case.
For the reasons set forth above, we find the speed bumps did not present an unreasonable risk of harm under the facts of this case. The judgment of the trial court is reversed. Costs at trial and on appeal are assessed to Catherine C. Moncla.
REVERSED.