VICTORY, J.
11We granted a writ in this wrongful death case to determine the scope of duty of the Louisiana Department of Transportation and Development (“DOTD”) to maintain the shoulder of a state highway. The specific issue is whether DOTD’s duty to maintain the shoulder encompasses the risk that a driver of a baekhoe not authorized for highway use will drive on the shoulder and attempt a sharp turn into a driveway at a relatively high rate of speed, hit a 2-4 inch depression in the asphalt, tip over, and be crushed by the baekhoe. After review of the record and the applicable law, we find DOTD’s duty did not encompass this risk. Therefore, we reverse the judgments of the lower courts and render judgment in favor of the defendant.
FACTS AND PROCEDURAL HISTORY
On June 20, 2005, Jesse Brooks Jr. (“Brooks”), an operating engineer for Industrial Plant and Maintenance, was driving a baekhoe along the shoulder of Highway 30 in an industrial area of St. Gabriel, Louisiana, for the purpose of delivering the baekhoe to another company. Brooks told his co-worker, Stephen Harris (“Harris”), that he was driving the baekhoe to “Sygenta,” a company located a short distance down the road. Harris followed Brooks in a pickup along the shoulder of Highway 30. When they reached Sygenta, Brooks did not turn in the ^driveway but continued along the shoulder until he reached the driveway of Suttles Trucking Company, at which time he made a sharp *189 right turn into the driveway and his backhoe tipped over to the left, falling on top of Brooks and killing him.
The plaintiffs, Brooks’ wife and children, filed a wrongful death suit against DOTD, alleging that a 2-4 inch depression in the asphalt on the shoulder where the highway met the 70-foot wide driveway caused the backhoe to flip over. The claim was tried before a jury in August, 2008, which rendered a verdict in favor of the plaintiffs and assessed damages in the amount of $811,413.00 in favor of Brooks’ wife, and $150,000.00 each in favor of Brooks’ two adult children. On appeal to a five-judge panel, the judgment was affirmed but amended to attribute 20% fault to Brooks. Brooks v. State of Louisiana, through the Department of Transportation and Development, 09-1267 (La.App. 1 Cir. 7/6/10), 41 So.3d 661 (unpublished). We granted DOTD’s writ application to consider whether DOTD’s duty to maintain state highways and shoulders extends to the driver of the backhoe in this case. Brooks v. State of Louisiana, through the Department of Transportation and Development, 10-1908 (La.11/12/10), 49 So.3d 875.
DISCUSSION
The plaintiffs’ theory of the case is that the shoulder had a 2-4 inch depression in the asphalt which Brooks drove over while turning and which caused the backhoe to tip over. The defense argues its duty to maintain the shoulder does not encompass the risk involved in this accident because Brooks was not authorized by law to drive the backhoe on the highway or the shoulder, the backhoe was a specialized construction vehicle which was inherently unstable and top-heavy, and Brooks was traveling too fast to negotiate the turn. DOTD argues the condition of the shoulder did not present an unreasonable risk of harm because vehicles authorized to travel on the highway or shoulder, such as cars, trucks, vans, |sand 18-wheelers, would not have been adversely affected by the condition of the shoulder.
DOTD’s duty is to maintain the public roadways in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. La. R.S. 48:21(A); Netecke v. State ex rel. DOTD, 98-1182 (La.10/19/99), 747 So.2d 489, 494-95; Campbell v. Department of Transp. & Development, 94-1052 (La.1/17/95), 648 So.2d 898, 901-01; Oster v. Department of Transp. & Development, 582 So.2d 1285, 1288 (La.1991). This duty extends to the shoulders of highways as well. Netecke, supra at 495; Brown v. Louisiana Indem. Co., 97-1344 (La.3/4/98), 707 So.2d 1240, 1242; Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170, 1172 (La.1986); Rue v. State, Dept. of Highways, 372 So.2d 1197, 1199 (La.1979). DOTD’s duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons a motorist might find himself on, or partially on, the shoulder. Netecke, supra at 495; Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566, 572; Rue, supra at 1199. This duty extends not only to prudent and attentive drivers, but also to motorists who are slightly exceeding the speed limit or momentarily inattentive. Netecke, supra at 495; Ledbetter v. State, Through La. Dept. of Transp. & Development, 502 So.2d 1383 (La.1987).
Nonetheless, DOTD is not a guarantor of the safety of all the motoring public under every circumstance. Fontenot v. Patterson Ins., 09-0669 (La.10/20/09), 23 So.3d 259, 271; Netecke, supra at 495. Nor is DOTD the insurer for all injuries or damages resulting from any risk posed by obstructions on or defects in the roadway. Id. In other words, *190 we will not impose liability for every imperfection or irregularity, but only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Fontenot, supra at 271; Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983). Whether the DOTD breached its duty, that is, whether the shoulder was in an unreasonably dangerous condition, is a question of fact and will depend on the facts and circumstances of each case. Fontenot, supra at 271; Cormier v. Comeaux, 98-2378 (La.7/7/99), 748 So.2d 1123, 1127. If the shoulder did not present an unreasonable risk of harm then DOTD, by definition, did not owe a duty to Brooks and cannot be held liable for the damages he sustained. Oster, supra at 1288. As a question of fact, we will review the jury’s determination that the shoulder presented an unreasonable risk of harm under the manifest error standard. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362, 365. Under the manifest error standard, an appellate court may not disturb a jury’s finding of fact unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173, 1176.
This Court has described the unreasonable risk of harm criterion as a guide in balancing the likelihood and magnitude of harm against the social utility of the thing, all the while considering a broad range of social and economic factors, including the cost to the defendant of avoiding the harm, as well as the risk and social utility of the party’s conduct at the time of the accident. Fontenot, supra at 268; Netecke, supra at 498. In every determination, all the circumstances surrounding the particular accident under review must be considered to determine whether DOTD’s legal duty encompassed the risk which caused the plaintiffs damages. Fontenot, supra at 268; Oster, supra at 1289.
The facts and circumstances of this accident were described at trial by an eyewitness, a police officer, and three expert witnesses. Steve Harris, Brooks’ co-employee, testified that Brooks asked him to follow him to Sygenta, where he was Isgoing to take the backhoe. Harris followed Brooks in a pickup truck. At trial, Harris testified that Brooks was traveling on the shoulder between 18 and 20 mph,[1] and that the maximum speed of this backhoe was 20 mph. Brooks passed up the entrance to Sygenta, and instead turned into the driveway of Suttles. Harris testified he assumed Brooks had inadvertently passed up Sygenta and was attempting to turn around in the Suttles driveway. As Brooks’ made a sharp right-hand turn into the driveway, the backhoe tilted over to the left and fell on top of Brooks, killing him. In Harris’s opinion, Brooks was driving too fast for the turn. Harris testified that Brooks was driving on the shoulder to avoid traffic. He stated that their company transports backhoes by driving them on the shoulder for short distance, otherwise they haul them, which can be expensive.
Jamal Carter, the police officer called to scene of the accident, testified he did not notice anything significant about the driveway, and did not believe anything inherent in the driveway caused the backhoe to turn over. From his review of the accident scene, he believed Brooks was going too fast to turn which caused the backhoe to turn over. The police report did not mention the condition of the shoulder as a cause of the accident.
*191 Andrew McPhate, an expert in accident reconstruction and vehicle dynamics, testified that the driveway where the accident occurred is 70 feet wide, and the highway has a 10 foot wide paved shoulder. McPhate testified there were irregularities in the asphalt at the scene of the accident, and he measured a depression of 2-4 inches in the shoulder. He described the backhoe as 2-wheel drive with a front end loader. He testified that when the outriggers are pulled up, the backhoe has a high center of gravity, with a large inertia for rocking front to back, and a propensity for acting like a seesaw. He testified the backhoe had no | (¡springs or shock absorbers, and can easily turn over, even at speeds as low as 10 mph. He believed the condition of the shoulder could have caused the front end to bounce up and if Brooks was holding on to the steering wheel, it might cause him to turn the steering wheel even more. He concluded with his opinion as to the cause of the accident as follows:
My opinion is simply that [the backhoe] was coming down the shoulder. He was going to execute and did attempt to execute a turn into that particular location. In all likelihood, the front wheels engaged these irregularities, very likely increased the angle of steering, and he entered that particular pavement, concrete pavement, turning too sharply for the speed he was traveling.
And as the vehicle starts to tip, the loading on the wheel is such that it would increase the steering and cause it to turn even more. And, so the operator to recover would have to execute some rapid steering to the left into the direction that it is trying to fall. He would actually had to steer into the direction it was trying to fall because it is wanting to turn more and more to the right. He would have to steer it back to the left, if he could do that. If he had— the problem is that once it starts up, he is hanging onto the steering wheel. And so now is he interacting with it, and depending on where he is hanging on to the steering wheel, it may have increased the steer — increased the turn rather then decreased the turn.
In his opinion, Brooks could have made the turn if the shoulder had a flat surface. He acknowledged on cross-examination that no one saw Brooks bounce or grab the steering wheel. He testified that the condition of the shoulder was not a problem for a car because a car has shock absorbers. Further, the condition was not hazardous for a van, an 18-wheeler, or any other kind of vehicle that is registered by the Department of Motor Vehicles to ride on the highway. On cross-examination, McPhate specifically declined to state that the condition of the shoulder was, more probably than not, a cause of the accident, and would only way “it is one of the possibilities.” He also stated on cross-examination that Brooks “was going too fast for the sharpness of the turn.”
17Puane Evans, an expert in traffic engineering, testified the depression was 3-4 inches, based on the fact that asphalt is usually placed in 2-inch layers. At the edge of the depression, he observed one of the layers missing, and nearer to the driveway, it looked to him that an additional layer was missing. He testified that the Louisiana Maintenance Planning Manual states that depressions in paved shoulders over one inch deep should be repaired, and that “turn outs,” such as this driveway, should be given special attention. The manual requires roads to be inspected at least every two weeks and the condition of this shoulder took many months to develop. He testified that Brooks had to traverse the depression to reach the point where he ended up. In his opinion, *192 Brooks could have made the turn going 10-15 mph over a flat surface. He did not know how sharply Brooks turned, but there was no reason to believe he was making a sharp turn because the driveway provided such a wide radius to turn in. On direct examination, he testified that the condition of the shoulder could be a problem for any type of vehicle that had to go on to the shoulder because it could disrupt the steering. He explained that the roughness of the asphalt reduces the friction between the tire and the roadway which causes some loss of steering control. However, on cross-examination, he testified that a van, car, or 18 wheeler would have had no problems going over this depression in the shoulder at a low rate of speed.
John Mounce, an expert in accident reconstruction, highway design and maintenance, and highway operations and safety, testified he believed Brooks’ backhoe turned over because Brooks was going too fast in a sharp turn. In his view, the depression not a cause of the accident. He testified the backhoe was more prone to tip over in a turn because it is top heavy, with a high center of gravity, and that the bucket was up causing the backhoe to have an even higher | ^center of gravity. In Mounce’s opinion, the fact that Brooks fell to the left when he was turning right indicates he was going too fast and turning too sharply.
A review of the circumstances surrounding this accident reveals that DOTD’s legal duty did not encompass the risk which caused Brooks’ death. There is no doubt that the magnitude of the harm in this case, Brooks’ death, was tremendous, and this is a factor to be weighed in the unreasonable risk of harm analysis. We must also consider that Brooks was not authorized by law to drive this backhoe on the highway or the shoulder. As the court of appeal correctly recognized, Brooks was not authorized to travel on the shoulder because La. R.S. 32:299 A(l)’s limited exception allowing off-road vehicles to travel on the shoulder is limited to those off-road vehicles used “solely for the purposes of farm-related activities within a five-mile radius of a farmer’s farm.” Further, while La. R.S. 32:298 allows “farm tractors” to operate on the shoulders under certain conditions, a “farm tractor” is defined by La. R.S. 32:1(19) as a “motor vehicle designed and used primarily as a farm implement, for drawing plows, moving machines, and other implements of husbandry.” It was uncontested that the backhoe in this case was not being used for “farm-related purposes” and would not fall under either of those exceptions. However, plaintiffs argue that backhoes possess similar characteristics to those farm vehicles, including a high center of gravity. Because these statutes authorize farm tractors and other forms of farm equipment to be operated on the shoulder, DOTD was aware that backhoes and similar vehicles would be using the shoulders, and therefore their duty extended to all these vehicles, including this backhoe. We disagree. The legislature has the right to make policy decisions as to which types of vehicles are authorized to travel on this state’s highways and shoulders, taking into account all relevant safety considerations among other things. Backhoes are inherently top heavy and [ 9unstable, and are not designed to for on-road transportation of persons or things, but are instead designed to perform construction related activities. Though the legislature has made a limited exception that would allow a backhoe to be operated on the shoulder if used for farming in certain circumstances, that policy decision was within their discretion likely driven by practical considerations involving farm operations. That certainly does not mean that all backhoes are authorized *193 to be driven on highway shoulders, or that the DOTD would necessarily owe a duty to every backhoe used for farming purposes. As stated earlier, all facts and circumstances surrounding a particular accident must be considered to determine whether DOTD’s legal duty encompassed the risk which caused the plaintiffs damages, and whether a vehicle is authorized to travel on the highway or shoulder is just one of those facts and circumstances. As highways are to be designed safely for vehicles designed to be traveled over them, the fact that the backhoe was not authorized for highway travel weighs against a finding that DOTD’s duty encompassed the risk involved here.
The physical and financial inability of DOTD to maintain the State’s roadways in anything more than a reasonably safe condition has also been considered by this Court as a factor in determining whether a particular condition presents an unreasonable risk of harm. Netecke, supra at 499 (cites omitted). The testimony indicated that this backhoe was inherently unstable and top-heavy, and very prone to tipping over, even at speeds of 10 mph. The site of the accident was an industrial area with heavy vehicles being driven over the shoulder and driveway which caused the asphalt to deteriorate somewhat. The testimony was consistent that a vehicle authorized for highway travel, such as a car, van, truck or 18-wheeler, would have encountered no difficulties traversing this shoulder during a turn. DOTD is responsible for thousands of miles of roads in this State. The cost hoto the State of maintaining the shoulders of state highways in such a condition that motorists operating vehicles not designed for highway use, and which may topple over even at low speeds traversing small areas of asphalt wear, would be great, and probably fiscally impossible.
Further, the social utility of Brooks’ conduct is minimal. Brooks was essentially taking a short cut, attempting to move the backhoe from one location to another by driving it on the shoulder, when the proper, albeit more costly method of delivery, would have been to haul it there.
Finally, we must take into account Brooks’ speed at the time of the accident in evaluating the risk of Brooks’ conduct. While there was only one eyewitness, and he testified at his deposition that Brooks was traveling 10-15 mph, and at trial that Brooks was traveling 18-20 mph, he clearly stated he felt Brooks was traveling too fast to make the turn he was attempting to make. This is consistent with the testimony of Officer Carter, as well as the expert testimony of McPhate and Mounce. Given his speed in attempting the turn in such an unstable vehicle, the risk posed by Brooks’ conduct was high. There was no reasonable factual basis for the jury to find that Brooks was a prudent driver exercising ordinary care under the circumstances. DOTD’s duty is to maintain the shoulder in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence; therefore, it was clearly wrong for the jury to find DOTD liable for Brooks’ death.
CONCLUSION
As stated, DOTD is not the guarantor of the safety of all the motoring public under every circumstance. DOTD is only liable for conditions that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. After reviewing all the circumstances surrounding this Inaccident, we find the jury was manifestly erroneous in finding the condition of the shoulder presented an unreasonable risk of harm. DOTD is simply not required to maintain *194 the roadway in such a condition that the driver of an unstable backhoe, unauthorized for highway or shoulder driving, traveling too fast to negotiate a sharp turn in that vehicle, will be able to negotiate the turn without injury. There was no evidence in the record that the condition of this shoulder could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances, in fact all the evidence was to the contrary. Therefore, the condition of the shoulder did not present an unreasonable risk of harm and DOTD’s duty did not encompass this risk. To hold otherwise would place an unreasonable burden on the State and DOTD to ensure a pavement surface on a heavily traveled shoulder so smooth that construction vehicles not authorized for highway use can be imprudently operated upon it.
DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and judgment is rendered in favor of the defendant.
REVERSED AND RENDERED.
JOHNSON, Justice, dissents and assigns reasons.
KNOLL, Justice, concurs and assigns reasons.

. At his deposition, Harris estimated Brooks' speed at between 10 and 15 mph.