# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1389

**JERRY RAMOS**

**VERSUS**

**STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT**

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 6242
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
### CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and J. David Painter, Judges.

**Amy, J., concurs in the result and assigns reasons.**

**AFFIRMED.**

**Robert Lawrence Beck, Jr.**
**Law Offices of Robert L. Beck, Jr., L.L.C.**
**P. O. Drawer 12850**
**Alexandria, LA 71315-2850**
**Telephone:  (318) 445-6581**
**COUNSEL FOR:**
     **Plaintiff/Appellant - Jerry Ramos**

**Ronald J. Fiorenza**
**Provosty, Sadler, DeLaunay, Fiorenza & Sobel**
**P. O. Drawer 1791**
**Alexandria, LA 71309-1791**
**Telephone:  (318) 445-3631**
**COUNSEL FOR:**
     **Defendant/Appellee - State of Louisiana, Through the Department of Transportation and Development**

**Laurel Irene White**
**Assistant Attorney General**
**P. O. Box 1710**
**Alexandria, LA 71309**
**Telephone:  (318) 487-5944**
**COUNSEL FOR:**
> **Defendant/Appellee - State of Louisiana, Through the Department of Transportation and Development**

**THIBODEAUX, Chief Judge.**

Plaintiff, Jerry Ramos, filed this suit against the State of Louisiana, through the Department of Transportation and Development (DOTD) after he fell from a rope swing into a creek located on a right-of-way owned by the DOTD, and was rendered a quadriplegic. He sued the DOTD under theories of negligence and strict liability. The DOTD filed a Motion for Summary Judgment on the basis of a lack of duty which the trial court granted. Mr. Ramos appeals that judgment. For the following reasons, we affirm.

I.

**ISSUES**

We will consider whether the trial court erred in granting summary judgment to the DOTD.

II.

**FACTS AND PROCEDURAL HISTORY**

In 1986, Mr. Ramos and a friend, Janice Box, accessed Big Creek in an area known as Second Bridge near Pollock, Louisiana. Second Bridge is located on a right-of-way owned by the DOTD. Mr. Ramos and Ms. Box swam in the creek for several minutes and observed that the creek had shallow, ankle-deep water near the edges and deeper, chest-deep water in the center. They then noticed a rope swing attached to a tree nearby and decided to swing from the rope into the water. They each swung several times, always landing safely in the chest-deep water. On Mr. Ramos's final swing, the rope slipped from his grasp before he intended and he landed headfirst into the shallowest part of the creek. Mr. Ramos

became a quadriplegic after sustaining a spinal cord injury as a result of his fall. He sued the DOTD and others for negligence and strict liability.[1]  Since this case has been active for over twenty years, it has an extensive procedural history.  This court explained that history in a prior opinion in this case, *Ramos v. State, ex rel. Dep't of Transp. and Dev.*, 07-851 (La.App. 3 Cir. 2/6/08), 977 So.2d 1066, *writ denied*, 08-1074 (La. 9/26/08), 992 So.2d 986, and we will not recount it here.  The subject of this appeal is the DOTD's most recent Motion for Summary Judgment. The trial court granted the motion and dismissed Mr. Ramos's action.  Mr. Ramos appeals that judgment.

III.

## LAW AND DISCUSSION

### *Standard of Review*

We review a grant of summary judgment de novo "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law."  *Supreme Servs. and Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638.  If the mover will not bear the burden of proof at trial on the matter, then he must only point out a lack of factual support for one or more elements essential to the non-mover's case.  La.Code Civ.P. art. 966(C)(2); *Simien v. Med. Protective Co.*, 08-1185 (La.App. 3 Cir. 6/3/09), 11 So.3d 1206, *writ denied*, 09-1488 (La. 10/2/09), 18 So.3d 117.  Once the mover has made a prima facie case that the motion should be granted, the non-mover must then present evidence sufficient to show a genuine

---

[1]The other defendants who were originally named in this lawsuit have been dismissed.

issue of material fact. *Id.* If the non-mover fails to present sufficient factual evidence that he might be able to meet his burden of proof, the motion should be granted. *Id.*

### *Discussion*

Mr. Ramos alleges that the DOTD had a duty to maintain its right-of-way in a reasonably safe manner and that it breached that duty by allowing the public to use the creek and rope swing, which presented an unreasonable risk of harm. The DOTD, on the other hand, argues that it had no duty to protect Mr. Ramos from consequences resulting from his own failure to maintain a sufficient grasp of the rope. Alternatively, the DOTD argues that the scope of its duty does not extend to these circumstances.

In a tort against the DOTD, the plaintiff has the burden of proving four elements: (1) the property on which the accident occurred was in the DOTD's custody or control; (2) the property was defective because it had a condition that created an unreasonable risk of harm; (3) the DOTD had actual or constructive notice of this defect; and (4) the defect was the cause-in-fact of the injury. *Toston v. Pardon*, 03-1747 (La. 4/23/04), 874 So.2d 791.[2] Further, the DOTD has a "duty to maintain the public highways in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence." *Id.* at 799.

On appeal, the DOTD does not dispute that it had custody or control of Second Bridge, or that it had actual or constructive notice of the rope swing. Further, Mr. Ramos's injury resulted from using the rope swing. The only issues presented are whether the DOTD owed a duty to Mr. Ramos, and whether the

---

[2]Mr. Ramos brought this suit under theories of both negligence and strict liability; however, the analysis under either theory is the same. *Id.*

property had a condition that created an unreasonable risk of harm. The unreasonable risk of harm analysis in a DOTD case is similar to the duty-risk analysis, or scope of the duty analysis, in a typical negligence case. *See Oster v. State ex rel, Dep't of Transp. and Dev.*, 582 So.2d 1285 (La.1991). It is a question of fact that depends on the particular circumstances of the case. *Brooks v. State ex rel. Dep't of Transp. and Dev.*, 10-1908 (La. 7/1/11), 74 So.3d 187. We find that the property did not have such a condition, and that the DOTD did not owe a duty to Mr. Ramos.

*Unreasonable Risk of Harm*

Mr. Ramos argues that the presence of the rope swing above the shallow creek created an unreasonable risk of harm that the DOTD had a duty to remedy, warn against, or block from public use. We disagree. Our courts employ a risk-utility balancing test to determine whether a condition creates an unreasonable risk of harm. *Pryor v. Iberia Parish Sch. Bd.*, 10-1683 (La. 3/15/11), 60 So.3d 594. The factors are (1) the utility of the thing; (2) the likelihood and magnitude of harm, which includes the obviousness or apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activity, or whether the activity was inherently dangerous. *Id.*; *Pitre v. La. Tech Univ.*, 95-1466 (La. 5/10/96), 673 So.2d 585. All of these factors favor granting summary judgment to the DOTD.

We examine the social utility of Second Bridge and Big Creek as a whole, not the utility of the rope swing specifically. *Pryor*, 60 So.3d 594. Outdoor areas open to the public provide an important social function; recreational activities are vital to many communities. In our warm climate, public swimming areas are

4

especially appreciated. The public derives a great benefit from public lakes, creeks, and rivers. Consequently, the social utility of Second Bridge is considerable.

The likelihood that harm will occur at Second Bridge is slight. Mr. Ramos and Ms. Box, along with many others, previously used the creek several times without incident. The magnitude of harm, however, was substantial, as Mr. Ramos was rendered a quadriplegic. Further, Mr. Ramos argues that we should consider another accident that occurred at Second Bridge in 1977 as evidence of the likelihood of harm in that area. That accident, however, did not involve a rope swing; rather, that individual was injured after diving off the bank into shallow water. That incident is not analogous to Mr. Ramos's situation.

Apparentness and obviousness of the condition are two other factors to consider when determining the likelihood of harm. *Pryor*, 60 So.3d 594. In his deposition, Mr. Ramos testified that he knew the creek was chest-deep at its deepest and ankle-deep at its shallowest. He knew, therefore, that there was a chance he could land in the shallow end of the creek; the condition of the creek was apparent. "[T]he risk was obvious and easily avoidable[,]" and Mr. Ramos "did not act with reasonable care for [his] own safety." *Bennett v. City of Lafayette*, 93-1113 (La.App. 3 Cir. 4/6/94), 635 So.2d 515, 517, *writ denied*, 94-1201 (La. 7/1/94), 639 So.2d 1167.

The cost of preventing this accident is difficult to quantify. Mr. Ramos argues that the DOTD should have removed the rope swing, warned against jumping or diving into the creek, or denied access to that area altogether. If the DOTD had removed the rope swing, someone else could have easily installed another one. It is unreasonable to expect the DOTD to bear the cost to continually

monitor the area. Further, a warning sign would not have prevented this accident as Mr. Ramos was fully aware of the creek's depth when he decided to swing from the rope. Denying access to Second Bridge altogether is too drastic, and the benefit to the public outweighs the risk. Further, it would have cost Mr. Ramos nothing to avoid the rope swing entirely. *See Netecke v. State ex rel. Dep't of Transp. and Dev.*, 98-1182 (La. 10/19/99), 747 So.2d 489. The DOTD is not responsible for ensuring against every possible risk at its rights-of-way. *See Brooks,* 74 So.3d 187.

The fourth and final factor is the inherent nature and social utility of Mr. Ramos's activity. Mr. Ramos's use of the rope swing was inherently dangerous. Mr. Ramos knew the depth of the water, and he testified that when he successfully used the rope swing, he curled his knees to his chest when he let go to avoid hitting the bottom of the creek. He knew the risks implicit in swinging off a rope swing over shallow water, and took steps to minimize those dangers. Unfortunately, he was unable to maintain his grasp on the rope of his final swing, and this accident resulted.

The totality of the circumstances and facts of this case indicate there was no unreasonable risk of harm at Second Bridge. Mr. Ramos exercised poor judgment; he knew the depth of the water, and the dangers of swinging off of the rope above shallow water. Further, the benefit Second Bridge provides to the community outweighs the likelihood of harm.

*Duty*

The DOTD owes a duty to maintain the public highways, shoulders, and surrounding area in a condition that is safe for persons exercising ordinary care

and reasonable prudence. *Brooks*, 74 So.3d 187. Although this duty technically applies to the motoring public, our jurisprudence has found that it extends to pedestrians as well. *Oster*, 582 So.2d 1285. In this case, because we find there was no unreasonably dangerous condition, we consequently find the DOTD owed no duty to Mr. Ramos. The absence "of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant." *Id.* at 1288. The DOTD is not required to ensure the safety of someone who acts without good judgment and contrary to ordinary prudence, when no reasonable risk of harm exists.

There is no genuine issue as to any material fact in this case, and the DOTD is entitled to judgment as a matter of law.

IV.

## CONCLUSION

For the reasons above, we affirm the trial court's grant of summary judgment to the DOTD. Costs of this appeal are assessed against Jerry Ramos.

**AFFIRMED.**

NUMBER 12-1389

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JERRY RAMOS

VERSUS

STATE OF LOUISIANA, THROUGH DEPARTMENT OF TRANSPORTATION
& DEVELOPMENT, ET AL.

AMY, J., concurring in the result.

I agree that an affirmation is appropriate in this case. However, I write separately in light of my differing analysis.

First, I note that the plaintiff filed suit for an accident occurring in 1986 and did so under both negligence and strict liability. In light of the time frame of the underlying event, La.R.S. 9:2800 is inapplicable to Mr. Ramos's strict liability cause of action. *See Ramos v. State, ex rel. DOTD*, 07-851 (La.App. 3 Cir. 2/6/08), 977 So.2d 1066, n.6 (citing *Jacobs v. City of Bunkie*, 98-2510 (La. 5/18/99), 737 So.2d 14), *writ denied*, 08-1074 (La. 9/26/08), 992 So.2d 986. Thus, the traditional elements of strict liability are applicable in this case. Under that theory, the plaintiff did not have to prove that the defendant knew or should have known of the risk involved as he was required to do under the negligence claim. I raise this point only for sake of completeness as neither knowledge nor notice seem to have been placed at issue here and this distinction does not influence the outcome of this case.

Additionally, in my opinion, the supreme court's discussion in *Brooks v. State, ex rel. DOTD*, 10-1908 (La. 7/1/11), 74 So.3d 187, offers definitive guidance in this case. In *Brooks*, the supreme court concluded that the condition of a public highway shoulder did not present an unreasonable risk of harm to an operator of a backhoe. Rather, the supreme court observed that the legislature did not include

backhoes in the type of vehicles it specifically authorized to use the state's highways and shoulders. *Id.* In its concluding language, the supreme court determined that:

> DOTD is not the guarantor of the safety of all the motoring public under every circumstance. DOTD is only liable for conditions that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. After reviewing all the circumstances surrounding this accident, we find the jury was manifestly erroneous in finding the condition of the shoulder presented an unreasonable risk of harm. DOTD is simply not required to maintain the roadway in such a condition that the driver of an unstable backhoe, unauthorized for highway or shoulder driving, traveling too fast to negotiate a sharp turn in that vehicle, will be able to negotiate the turn without injury. There was no evidence in the record that the condition of this shoulder could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances, in fact all the evidence was to the contrary. Therefore, the condition of the shoulder did not present an unreasonable risk of harm and DOTD's duty did not encompass this risk. To hold otherwise would place an unreasonable burden on the State and DOTD to ensure a pavement surface on a heavily traveled shoulder so smooth that construction vehicles not authorized for highway use can be imprudently operated upon it.

*Id.* at 193-194.

Given the discussion in *Brooks*, I find that the present case offers a stark example of a risk to which DOTD's duty does not extend. DOTD merely held a right-of-way to the subject property. The supreme court has specifically stated that, in the context of a right-of-way, "DOTD owes a duty to maintain the land in such a condition that it does not present an unreasonable risk of harm to motorists using the adjacent roadway or to others, such as pedestrians, who are using the area in a reasonably prudent manner." *Oster v. Dep't of Transp. & Dev.*, 582 So.2d 1285, 1291 (La.1991). Certainly, the plaintiff's use of the property was not within such a context. Rather, any duty attendant to the limited purposes of a right-of-way did not extend to the type of impermissible and obviously hazardous recreational use engaged in by the plaintiff.

2

For these reasons, I concur with the majority that the trial court correctly entered summary judgment in favor of DOTD.