CHUTZ, J.
| {¡The State of Louisiana, through the Department of Transportation and Development (DOTD), appeals a judgment holding it partially liable for a two-vehicle collision that occurred on U.S. Highway 90 in Jeanerette. After reviewing the record and applicable law, we reverse, finding insufficient evidence in the record to rebut *1110 the presumption that the old highway was reasonably safe.
FACTS AND PROCEDURAL HISTORY
Longtime friends, Miriah Schouest and Nicole Smith, lived and worked in the Houma area. For fun, they enjoyed going for long drives to talk and listen to music. Usually they drove east on Highway 90 towards New Orleans. However, on the evening of November 9, 2010, they decided to drive west towards Morgan City, a direction they had never gone before. In the area where Ms. Schouest was driving, Highway 90 has four lanes; a grassy median divides the eastbound and westbound lanes. Ms. Schouest was driving her Ford Taurus, and Ms. Smith sat beside her in the front passenger seat.
After they had been on the road for about an hour and a half, Ms. Schouest saw a Shell gas station to her left and decided they should stop there to get a soft drink' and then turn back 'towards home. It was dark. Ms. Schouest slowed her'vehicle to look for a median cross-over that would allow her to access the Shell station. Ms. Schouest eventually found the cross-over, but before she could complete the turn, her. vehicle was slammed from behind by a pick-up truck driven by Joshua J. Landry. Ms. Smith suffered a severe and permanent brain injury as a result .of the accident. ■ Ms. Smith was interdicted after the accident and Ms. Smith’s mother, Thea M. Smith, serves as her curatrix.
On March 14, 2011, Ms. Smith’s mother (plaintiff) filed a petition for damages on Ms. Smith’s behalf against DOTD, Mr. Landry, and Mr. Landry’s insurer. Plaintiffs claims against DOTD were based on her contention that DOTD ^negligently failed to provide an adequate left-turning lane and negligently failed to provide adequate warning signs to drivers attempting to turn left at this location.
The matter was tried' before a jury in August 2014, following which the jury returned a verdict in favor of the plaintiff. The verdict assessed DOTD with 70% fault, Mr. Landry with 20% fault, and Ms. Schouest (who was not named as a defendant in the proceeding) with 10% fault. The plaintiff was awarded damages in the amount of $8,406,550.00. Judgment was rendered and signed in accordance with the jury verdict on February 9,2015.
On February 20, 2015, DOTD filed a motion for judgment notwithstanding the verdict and an alternative motion for a new trial. The trial court held a hearing on these motions and subsequently denied both in a judgment that was rendered and signed on May 4, 2015.
DOTD suspensively appeals the trial court’s judgments of February 9, 2015 and May 4, 2015, raising the following assignments of error:
1. The jury erred in finding DOTD liable for the accident.
2. Alternatively, the jury erred in assigning seventy percent (70%) fault to DOTD.
3. The jury erred by awarding excessive damages for future lost earnings.
We pretermit consideration of the second and third assignments of error in light of our finding with regard to the first.
LIABILITY OF DOTD
In order to find DOTD liable based on the design, construction, or condition of a state roadway, a plaintiff must prove that (1) DOTD had custody of the thing which caused the plaintiffs damages, (2) the thing was defective because it had a condition which created an unreasonable risk of harm, (3) DOTD had actual or *1111 constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of the plaintiffs injuries, Cormier v. Comeaux, 98-2378 (La.7/7/99), ing, So.2d 1123, 1127. Failure to establish any one of these elements is fatal to the case. Netecke v. State, Department of Transportation and Development, 98-1182 (La.10/19/99), 747 So.2d 489, 494.
It is undisputed that DOTD had custody over the portion of Highway 90 that is at issue herein. The inquiry thus turns to whether the plaintiff satisfied her burden of proving the second element—that the condition of Highway 90 was defective because it had a condition which created an unreasonable risk of harm. Because the jury specifically found that the accident site posed an unreasonable risk of harm, we must review the jury’s finding with respect to this element under the manifest error standard of review. See Brooks v. State, Department of Transportation and Development, 2010-1908 (La.7/1/11), 74 So.3d 187, 190.
Under the manifest error standard, an appellate court may not disturb a jury’s finding of fact unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Brooks, 1A So.3d at 190. Although deference to the factfinder should be accorded, our Court has a constitutional duty to review facts. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221. Consequently, our Court has the prerogative to determine whether the trial court verdict was clearly wrong based on the evidence or whether the trial court verdict was clearly without evidentiary support. Id.
By law, DOTD has a duty to “maintain, repair, construct, or reconstruct” public highways in a manner that is not unreasonably dangerous for a reasonably prudent driver. La. R.S. 48:35E(l)(a). Stated another way, DOTD must keep the state’s highways in a reasonably safe condition. Lee v. State, Department of Transportation and Development, 97-0350 (La.10/21/97), 701 So.2d 676, 678. Whether DOTD has breached its duty to the motoring public by knowingly | ^maintaining a defective or unreasonably dangerous roadway depends on the facts and circumstances of each case. Id.
In this case, the record reflects that roadway plans for the portion of Highway 90 that is at issue in this case— between Baldwin and Jeanerette—were finalized in 1969. This portion of the highway has never been reconstructed. At the time this section of Highway 90 was built, the highway complied with DOTD’s design standards and its design was consistent with the standards set by the American Association of State Highway and Transportation Officials (AASHTO). AASHTO did not mandate the use of left-turn lanes leading to median cross-overs at the time the cross-over was designed and constructed.
The highway also complied with the Manual on Uniform Traffic Control Devices (MUTCD) standards that were in effect at the time the motor vehicle accident occurred. Plaintiff contends the absence of warning signs at the site of the cross-over constituted a violation of the MUTCD; however, the MUTCD clearly makes the use of intersection warning signs discretionary.
This evidence is important because it invokes two legal presumptions that favor DOTD. The first legal presumption provides that when any public highway is constructed in accordance with the regulations or guidelines in effect on the date of approval by the chief engineer of the original or amended design for the- construction or major reconstruction of a highway, *1112 there shall be a presumption that the highway is constructed in a reasonably safe condition. La. R.S. 48:35E(l)(b). The second legal presumption provides that compliance with the provisions of the MUTCD is prima facie proof of DOTD’s absence of fault when an injured motorist attempts to predicate DOTD’s liability on improper signalization or road markings. La. R.S. 32:235E; Jacques v. State, Department of Transportation and Development, 2003-2226 (La.App. 1st Cir.9/17/04), 905 So.2d 294, 299, writ denied, 2004-3013 (La.2/18/05), 896 So.2d 36.
| (iWith these presumptions in place, the plaintiff bore the burden of proving that the roadway was unreasonably dangerous where the highway was presumed to be reasonably safe without the lefLturn lane and where DOTD was presumed to be free of fault with respect to the signage that was posted in advance of the median crossover. Plaintiff attempted to satisfy her significant burden by adducing the following evidence about the roadway at trial.
Highway 90 is the highest volume, most-traveled roadway in St. Mary Parish. The speed limit on the four-lane divided highway where the accident occurred is 65 miles per hour. The road is straight and does not contain any sight distance obstructions.
Before the accident, Ms, Schouest was driving on the inside westbound lane. On the opposite side of the highway, to Ms. Schouest’s left, there was a small cluster of businesses that included a Shell gas station, a truck stop with a video poker casino attached to it, and a restaurant. A median cross-over that allowed westbound motorists to access the businesses on the other side of the highway was located about 180 feet past the Shell gas station.
At the time of the accident, it was dark outside and there were no lights that illuminated the median cross-over; the bright lights from the gas station and truck stop across the way did not reach as far as the median cross-over. The location of the median cross-over was marked by the cessation of the yellow fog line on the inside of the westbound lanes and reflective “one-way” and “do not enter” signs that were posted in the grassy median adjacent to the cross-over. The “one-way” sign was angled in such a way that it pointed to the right where Ms. Schouest desired to turn left. The Louisiana State Trooper who investigated the accident, Trooper Ives Scott Smith, acknowledged that motorists have to slow down to make a left turn at the cross-over where the accident- occurred.
|7Ms. Schouest testified that she was driving slowly, almost at a stop, trying to find the cross-over when she was hit from behind by Mr. Landry’s pick-up truck. The point of collision was in the left westbound lane, just past the center of the median cross-over.
Dr. Olin Dart, a highway design expert retained by the plaintiff, testified that the site of the accident was hazardous because turning motorists had to slow down in the “high-speed left lane” to make the turn and because, at night, motorists could not see the cross-over from the point at which they needed to begin their preparations to decelerate. In his opinion, the median cross-over merited the addition of a turn lane or the placement of cross-over warning signs to assist motorists with finding the cross-over. -
Notably, Dr. Dart did not posit that the highway failed to comply with- DOTD or AASHTO design standards in place at the time the highway was designed; he also did not posit that the highway had ever been reconstructed. Instead, he testified that he disagreed with the design policy DOTD had in effect at the time this highway was constructed because he believed DOTD should have required the inclusion *1113 of left-turn lanes before median cross-overs like this one. In the same vein, Dr. Dart acknowledged that DOTD was not required by the MUTCD to use the type of crossover warning signs he recommended. Dr. Dart conceded that he has never seen a cross-over warning sign used on any Louisiana highway.
Meanwhile, Dr. Joseph Blaschke, the highway design expert retained by DOTD, opined that it was reasonable for DOTD not to have installed a left-turn lane at the median cross-over at issue in this case because hundreds of these types of median cross-overs exist around the state. According to Dr. Blaschke, there was no reason to expect DOTD to come in and add a turn-lane for this particular crossover when the cross-over had exceptional sight distance, there was no history of complaints about it, and there was no significant accident history there. Dr. Blaschke |salso disagreed with plaintiffs suggestion that DOTD should have posted cross-over warning signs to mark the location of the cross-over. According to him, cross-over warning signs are not appropriate for cross-overs that have unlimited sight distance like the one at issue in this case.
Other pertinent testimony about the highway came from DOTD’s Assistant District Administrator of Operations, Chris James Lissard, who testified that he had never received any complaints about the median cross-over at issue herein. Further, he was not aware of any prior accidents happening there. In fact, no evidence of prior accidents at the site was offered at trial. Finally, DOTD established that there was a low volume of motorists who used the median cross-over in question.
The record established the following about Mr. Landry, the driver of the pickup that crashed into Ms. Schouest’s vehicle. On the night of the accident, Mr. Landry was driving to his friend’s place in Youngsville from his home in Franklin. He had driven the route many times before and had previously seen cars turning left at the median cross-over where the accident occurred. He had seen “close calls with other vehicles” there.
According to Mr. Landry, he was driving in the right westbound lane until he approached a slower-moving 18-wheeler truck. He decided' to pass the truck by entering the left westbound lane. He switched lanes right before he passed the Shell gas station. At the time, he was driving about 60 miles per hour. He estimated that he was in the left lane for about two seconds before the collision occurred. He never hit his brakes. After the collision, Mr. Landry admitted to Trooper Smith, the investigating officer, that he had been looking at the dashboard setting his cruise control. At trial, Mr. Landry acknowledged that he might have been trying to set his cruise control after he passed the truck.
Considering the totality of this evidence, we find that the plaintiff did not satisfy her burden of proving that Highway 90 had a condition which created an [ unreasonable risk of harm, particularly in light of the legal presumptions that apply herein.
While the median cross-over where this accident occurred undoubtedly would be safer if there were a left-turn lane leading to it, by law, the road is presumed to be reasonably safe simply because the design standards in place at the time the highway was built did not require the inclusion of a left-turn lane. See La. R.S. 48:36E. This legal presumption recognizes the reality that it is physically and financially impossible to bring all of the state’s roads up to modem standards; the state could not possibly meet such a burden. See Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170, 1173 (La.1986). Here, *1114 where there is no evidence that any other accident occurred at this cross-over; no history of complaints made about this cross-over; and an undisputedly low volume of motorists who drive over the median cross-over, we find the record is devoid of sufficient evidence to rebut the presumption that the condition of this roadway was reasonably safe without the left-turn lane.
We also do not find that sufficient evidence exists to rebut the presumption that DOTD was not at fault for failing to post any warning signs about the cross-over. It is undisputed that the use of warning signs to mark the approach of a median cross-over is discretionary. Like the Louisiana Supreme Court in Lee, we decline to find that the absence of a warning sign rendered the median cross-over unreasonably dangerous. See Lee, 701 So.2d at 679. We believe it would place an undue burden on DOTD, in the exercise of its discretionary power, to expect it to erect warning signs before the median cross-over at issue herein, where there was no history of complaints about the site, no history of accidents there, and where two reflective signs were already posted immediately adjacent to the cross-over, helping to direct nighttime motorists’ attention to the site of the cross-over. See Id.
| ^Accordingly, we conclude that the decision of the jury and the corresponding judgment of the trial court, finding DOTD at fault, was clearly wrong. Insufficient evidence was adduced to satisfy plaintiffs burden of proving that the condition of the roadway was unreasonably dangerous. Rather, our thorough review of the record compels us to conclude that the tragic accident was caused primarily by the fault of Mr. Landry, who chose to undertake a passing maneuver, at night, as he approached the cross-over where he had previously seen “close calls,” while setting his cruise control.
DECREE
Based on the foregoing, the portion of the judgment of the trial court that allocated fault to the State of Louisiana, through the Department of Transportation and Development, is reversed, and judgment is rendered allocating 90% fault to Joshua J. Landry and 10% fault to Ms. Schouest. All costs of this appeal are assessed against Mr. Landry.
REVERSED IN PART AND RENDERED.